**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ELAINE PASSINEAU

                            Plaintiff,

        v.                                                    5:16-cv-1431
                                                              (TJM/DEP)
MCLANE COMPANY, INC., MCLANE/EASTERN,
INC., d/b/a MCLANE NORTHEAST, and
MICHAEL WARTHEN,

                            Defendants.

_____

**Thomas J. McAvoy, SR. U.S.D.J.**


## DECISION & ORDER

        Before the Court is the motion to dismiss, dkt. # 20, of Defendants McLane

Company, Inc. ("MCI"), and McLane/Eastern, Inc.'s ("McLane Eastern") in this

employment-discrimination action.  Defendants filed the motion and briefed the issues.

Plaintiff, despite being accorded two extensions of time to respond to the motion, has not

filed a brief.  For the reasons explained below, the Defendants' motion will be granted in

part and denied in part.

## I.      BACKGROUND

        Plaintiff filed the instant Complaint on December 12, 2016.  See Complaint

("Complt."), dkt. # 1.  Plaintiff's Complaint alleges that she suffered discrimination in her

employment because of her sex and disability, as retaliation for using medical and

disability leave, and in retaliation for complaining about sexual harassment by a co-worker,

1

Defendant Michael Warthen.  Id. at ¶ 2.  Plaintiff avers that Defendants hired her to work at their Baldwinsville, New York, facility on or about February 27, 2014.  Id. at ¶ 13. Beginning on her first day of work, Warthen directed "unwelcome attention" at her.  Id. at ¶ 14.  Warthen continued to "pursue" Plaintiff, even as she received a medical diagnosis that required surgery and began to suffer from depression and insomnia.  Id. at ¶ 15.

Plaintiff further alleges that she complained about Warthen's harassment to her bosses, Human Resource Manager Anne Orr and Warehouse Manager Denson.  Id. at ¶ 16.  Rather than helping her, the Complaint alleges, these bosses caused Plaintiff to feel "singled out, punished and demeaned."  Id.  Eventually, Defendants' president accused her of being untruthful and of engaging in a relations with Warthen that violated the company's fraternization policy.  Id. at ¶ 17.  The Defendants did not punish Warthen, but Plaintiff felt pressured to resign.  Id.  Plaintiff contends that Defendants' conduct was "willful, and based on a pretextual claim relative to her leave status, as it was related to her disability, and because of her sex and report of sexual harassment, plus FMLA leave and known record of medical conditions."  Id. at ¶ 22.

Plaintiff's Complaint contains six counts.  The first count alleges that Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., by intentionally discriminating against her in employment as a result of her disability.  Counts Two and Three alleges discrimination on the basis of sex and disability in violation of the New York Human Rights Law and retaliation under that law as well.  Count Four alleges violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., contending that Defendants failed to provide Plaintiff with proper FMLA notice prior to terminating her and by firing Plaintiff because she had previously utilized FMLA leave.

2

Count Five claims that Defendants violated Plaintiff's right to retirement, disability and insurance benefits guaranteed by the Employee Retirement Investment Savings Act ("ERISA"), 29 U.S.C. § 1104(a).  Finally, Count Six alleges that Defendants discriminated against Plaintiff in employment on account of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

Defendant Warthen filed a *pro se* answer to the Complaint.  See dkt. # 22.  On June 9, 2017, the McLane Defendants filed the instant motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6).  The Court granted Plaintiff an extension of time to respond to the Defendants' motion.  See dkt. # 27.  The Court denied Plaintiff's motion for leave to file an amended complaint with leave to renew. See dkt. # 29.  Plaintiff's filing did not meet the requirements of the local rules and the Court directed that Plaintiff, should she choose to file an amended complaint, do so in the form the rules required.  Id.  Plaintiff has not filed an amended complaint and has not responded to the Defendants' motion.  The time for such response has long passed and the Court will apply the appropriate standard under the circumstances.

## II.    LEGAL STANDARD

The McLane Defendants have filed a motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and [draw] all reasonable inferences in the plaintiff's favor."  Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet does not apply to legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by

3

mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). When, as here, the Plaintiff proceeds pro se, the Court "'construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 146 (2d Cir. 2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)). "This is especially true when dealing with pro se complaints alleging civil rights violations." Id.

Defendant MCI also seeks dismissal in part pursuant to Federal Rule of Civil Procedure 12(b)(2). Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move to dismiss the case for "lack of personal jurisdiction." FED. R. CIV. P. 12(b)(2). "The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). When a party moves to dismiss a complaint for lack of personal jurisdiction and the matter "is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." A.I. Trade Fin. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993). Though the Plaintiff has the burden of establishing jurisdiction, "where no evidentiary hearing has been held, the plaintiff need make only a prima facie showing of jurisdiction." Windfield v. C & C Trucking, 56 Fed. R. Serv. 3d at *5 (S.D.N.Y. 2003). Still, "'[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" APWU v. Potter, 343

4

F.3d 618, 627 (2d Cir. 2003) (quoting LeBlanc v. Cleveland, 198 F.3d 353, 356 (2d Cir.

1999)).  The court "'retains considerable lattitude devising the procedures it will follow to

ferret out the facts pertinent to jurisdiction.'"  Id. (quoting Phoenix Consulting, Inc. v.

Republic of Angola, 342 U.S. App. D.C. 145, 216 F.3d 36, 40 (D.C. Cir. 2000)).

    McLane Eastern seeks dismissal pursuant to Federal Rule of Civil Procedure

12(b)(5), which provides for dismissal for "insufficient service of process."  FED. R. CIV. P.

12(b)(5).  This Rule implicates Rule 4 of the Federal Rules of Civil Procedure, which

provides in relevant part that:

> If a defendant is not served within 90 days after the complaint is filed, the
> court–on motion or on its own after notice to the plaintiff–must dismiss the
> action without prejudice against the defendant or order that service be made
> within a specified time.  But if the plaintiff shows good cause for the failure,
> the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).  In short, "Federal Rule of Civil Procedure Rule 12(b)(5) provides for

dismissal of an active case if service of process is not timely effected in accordance with

Federal Rule of Civil Procedure 4(m)."  AIG Managed Mkt. Neutral Fund v. Askin Capital

Mgmt., 197 F.R.D. 104, 107-08 (S.D.N.Y. 2000).  A plaintiff can avoid the rule by showing

"good cause" for failing to serve the complaint, but that "plaintiff bears the burden of proof

in showing that it had good cause in not timely serving the defendant."  Id.  "A delay in

service resulting from the mere inadvertance, neglect, or mistake of a litigant's attorney

does not constitute good cause."  Id. at 108.

    Plaintiff did not respond to the motion.  Since "no response was necessary" to a

motion to dismiss, the Court will apply the appropriate legal standard and determine

whether Plaintiff's Amended Complaint states a claim upon which relief could be granted.

Maggette v. Dalsheim, 709 F.2d 800, 802 (2d Cir. 1983).  At the pleadings stage, "the

plaintiff need show only a *prima facie* case." Id.

## III.    ANALYSIS

### A.    Personal Jurisdiction for McLane, Inc.

McLane, Inc., contends that the Court lacks personal jurisdiction over that company and the Court should therefore dismiss the action against MCI entirely.  Defendants argue that McLane, Inc., is not domiciled in New York and does not do business in New York in the sort of continuous and systematic way that would subject the Defendant to general personal jurisdiction.  Likewise, none of the means articulated in New York law to establish "long-arm jurisdiction, such as transacting business in the state, committing a tortious act in the state, or committing a tortious act outside the state that causes injury to a person in the state, provide a basis for exercising such jurisdiction.  Plaintiff's cause of action, Defendant argues, does not arise form MCI's transaction of business in the state.

The question here is whether New York law and federal law permit an exercise of jurisdiction over McLane, Inc., a company headquartered in Texas.   "In the absence of a federal statute specifically directing otherwise, and subject to the limitations imposed by the United States Constitution, we look to the law of the forum state to determine whether a federal district  court has personal jurisdiction over a foreign corporation."  Brown v. Lockheed Martin Corp., 814 F.3d 619, 624 (2d Cir. 2015).  "'[T]he court must look first to the long-arm statute of the forum state, in this instance New York.'" Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (quoting Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir 1997)).  If the long-arm statute permits jurisdiction, "the court must decide whether such exercise comports with the requisites of due process."  Id. (internal

citations omitted).  A court that finds a lack of personal jurisdiction under state law need not reach the due process question.  Id.

Defendants argue that MCI does not qualify for service in New York, either as  a company present and doing business in the state, or by virtue of the "long-arm" statute. Defendants point to two sections of New York's Civil Practice Law and Rules ("CPLR") in raising this argument.  The Court will address each section in turn.

###### i.    CPLR § 301

New York CPLR § 301 "provides for general jurisdiction over defendant corporations that are 'doing business' in New York."  Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione, etc., 937 F.2d 44, 50-51 (2d Cir. 1991).  To be subject to jurisdiction on this basis, the corporation must have "engaged in a such a continuous and systematic course of 'doing business' here that a finding of its 'presence' in the jurisdiction is warranted." Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 33, 565 N.E.2d 488, 4909 (N.Y. 1990).   "The test for 'doing business' is a 'simple and 'pragmatic one,' which varies in its application depending on the particular facts of each case."  Id. (quoting Laufer v. Ostrow, 55 N.Y.2d 305, 309-310 (1982).  A corporation must "[do] business" in the state "'not occasionally or causally, but with a fair measure of permanence and continuity so as to warrant a finding of its presence in this jurisdiction.'" Okeke v. Momah, 132 A.D.3d 648, 649, 17 N.Y.S.3d 746, 748 (2d Dept. 2015) (quoting Sedig v. Okemo Mtn., 204 A.D.2d 709, 710, 612 N.Y.S.2d 643 (1994)).  "Mere solicitation of business within New York will not subject a defendant to New York's jurisdiction." Mejia-Haffner v. Killington, Ltd., 119 A.D.3d 912, 913, 990 N.Y.S.2d 561, 563 (2d Dept. 2014).

7

Plaintiff alleges that MCI, "while having [a] corporate office in Texas, is a Corporation . . . duly organized and operating . . . under the applicable laws of the State of New York, and exercising relevant supervision and control over its local affiliate or subsidiary corporation, including its human resource operations," and that Defendant McLane Northeast is one of these subsidiaries.  Defendants respond to these allegations with declarations from various MCI officials.  Plaintiff has not disputed these declarations nor provided any contrasting evidence.

Defendants submit the Declaration of Kevin Koch, MCI's Treasurer.  See dkt. # 20-5.  Koch declares that MCI is a "Texas corporation with its principal place of business . . . in Temple, Texas."  Id. at ¶ 2.  MCI "is a supply chain services company" that "supplies grocery products to convenience stores, mass merchants, and drug stores in the United States."  Id.  MCI supplies these products "through its operating subsidiary corporations," of which Defendant McLane Northeast is one.  Id.  MCI's bank accounts, financial statements, and business records, Koch avers, are managed in Temple, Texas.  Id. at ¶ 3.  Koch also declares that Mclane Northeast, not MCI, "operates the McLane Northeast distribution center . . . in Baldwinsville, New York[.]"  Id. at ¶ 5.  McLane Northeast "is a separate corporate entity from MCI."  Id.  Moreover, "MCI officers have not conducted any MCI corporate meetings or MCI corporate conferences in New York."  Id. at ¶ 6.

Defendants also submit the declaration of Stephanie McAtee, MCI's Director of Payroll.  See dkt. # 20-6.  As Director of Payroll, McAtee is responsible for "helping ensure that MCI's payroll records are appropriately maintained in the regular course of its business."  Id. at ¶ 2.  McAtee maintains that MCI has no bank accounts in New York.  Id.  McLane Northeast's employees are not MCI employees.  Id. at ¶ 3.  MCI does offer

8

McLane Northeast "technical support by accessing and extracting electronic payroll records upon request from McLane Northeast."  Id.

Anne J. Orr, Human Resources Manager at McLane Northeast, also submitted a declaration.  See dkt. # 20-7.  Orr avers that McLane Northeast is a subsidiary of MCI, but that McLane Northeast "employs the truck drivers and other personnel who work at its Baldwinsville Facility."  Id. at ¶ 2.  McLane Northeast, not MCI, "controls the implementation of its Baldwinsville distribution center's employment policies and practices for its operations and" employees.  Id. at ¶ 3.  McLane Northeast works to "comply with the requirements of New York state law even if different from those used by MCI for its operations outside New York."  Id.  Orr manages the relationship between workers and management at McLane Northeast and maintains employee records in the regular course of business.[1]  McLane Northeast manages "job duties and responsibilities" for McLane Northeast employees, as well as providing training, preparing "shift schedule assignments" and "conduct[ing] job performance reviews."  Id. at ¶ 5.  Moreover, McLane Northeast is in charge of "hiring, supervising, promoting, disciplining, and terminating all of its employees."  Id.  In other words, "McLane Northeast has control over the work environment at its facility in Baldwinsville, New York."  Id.  Orr relates that Plaintiff, a former McLane Northeast employee, was not hired or employed by MCI.  Id. at ¶ 6.  She received her wage statements from McLane Northeast, and was listed as a McLane Northeast employee.  Id.  McLane Northeast made the decision to fire Plaintiff.  Id.  McLane Northeast maintained all of Plaintiff's relevant employment documents, including

---

[1]Orr refers to McLane Northeast employees as "teammates."

her personnel files, qualification files, shift schedule, job description, and training. Id. at ¶ 7.

These declarations are sufficient for the Court to conclude that MCI does not "do business" in New York and is therefore not subject to jurisdiction pursuant to Section 301. MCI is a Texas company, operating in that state. All of the company's offices, records, and financial activities are operated out of Texas. Any connection to New York is through a subsidiary, which operates independently of MCI. Because MCI lacks any sort of systematic, continual, or permanent presence in New York that would cause the Court to conclude that the Company is "at home" in New York, MCI is not subject to jurisdiction under Section 301.

The Court might assert jurisdiction over MCI, however, on the basis that MCI's subsidiary, McLane Northeast, operates in the state. A parent corporation can be subject to jurisdiction based on a subsidiaries' activities, but a parent's "'control over [a] subsidiary's activities . . . must be so complete that the subsidiary is, in fact, merely a department of the parent.'" Goel v. Rmachandran, 111 A.D.3d783, 787, 435 (2d Dept. 2013) (quoting Delagi v. Volkswagenwerk AG of Wolfsburg, Germany, 29 N.Y.2d 426, 432, 278 N.E.2d 895 (1972)). Jurisdiction exists "only when the two corporations are 'in fact, if not in name . . . one and the same corporation'" and "'there is realistically no basis for distinguishing between them[.]" Id. (quoting Public Adm'r of County of N.Y. v. Royal Bank of Can., 19 N.Y.2d 127, 132, 224 N.E.2d 877 (1967)).

The unrefuted declarations cited above make clear, however, that MCI's control over McLane Northeast is not so complete that the Court has no means of distinguishing between them. Those declarations indicate that McLane Northeast operates

10

independently from MCI, particularly when it comes to the sorts of employment practices that are the subject of this lawsuit. McLane Northeast employees are not MCI employees, and those employees work according to McLane Northeast's terms and rules. McLane Northeast operates its own facilities, relying on MCI for business support. This information makes clear that the two organizations, though related, have an independent operation that allows the Court easily to distinguish them.

As such the Court will grant the motion with respect to Defendants' claim that personal jurisdiction over MCI is unavailable under CPLR § 301.

### ii.    CPLR § 302(a)

Defendants also deny that the Court can exercise jurisdiction over MCI pursuant to New York's "long arm" statute, CPLR § 302(a). "A defendant who is not 'doing business' in New York within the meaning of section 301 may be sued in New York on a lesser showing of forum contacts if the cause of action arises from those contacts." Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 763 (2d Cir. 1983). Section 302(a) provides that "[a]s to a cause of action arising from any of the acts enumerated in this section," the Court may exercise jurisdiction over a person or person's agent who:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

11

4.  owns, uses or possesses any real property situated within the state.

CPLR § 302(a).

The Court will address each of the four subsections to determine whether MCI is subject to long-arm jurisdiction.

### a.  Section 302(a)(1)

"It is well settled that in order for a court to obtain personal jurisdiction over a party under the 'transaction of business' [element] of § 302(a)(1), the party need not be physically present in the state at the time of service." Bank Brussles Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2e Cir. 1999).  Instead, a party must have "'purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws[.]'"  Id. (quoting Parke-Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 18, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970)).  Even one transaction could invoke jurisdiction, "so long as the relevant cause of action arises from that transaction."  Id.  Jurisdiction exists when "the defendant's activities" in the state "'were purposeful and there is a substantial relationship between the transaction and the claim asserted.'"  Chole v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 170 (2d Cir. 2010) (quoting Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 622 N.E.2d 40, 43 (N.Y. 1988)).  The court must find "some articulable nexus between the business transacted and the cause of action sued upon[.]"  Beacon Enterprises, 715 F.2d at 764.

The Court finds that MCI's conduct does not expose the Defendant to jurisdiction in this respect.  As explained above, the evidence here indicates that MCI does not itself transact business in the state.  McLane Northeast, which is not controlled by MCI, does so instead.  Moreover, the causes of action sued upon in this case do not arise from any

business transactions that MCI may have had with anyone in the state, even with McLane

Northeast.  The causes of action in this case arise from alleged violations of workplace

laws protecting women from discrimination and harassment.  Such conduct is not related

to any business transactions that MCI undertook.  The motion will be granted in this

respect.

### b.    Section 302(a)(2)

Section 302(a)(2) asserts jurisdiction over any person who "commits a tortious act

within the state, except as to a cause of action for defamation of character arising from the

act[.]" CPLR § 302(a)(2).  This provision offers no basis for long-arm jurisdiction in this

matter.  As explained above, the evidence indicates that MCI had no presence in the state

and thus could not have committed a tortious act within the state that gave rise to

Plaintiff's claim, even if the Court defined tortious acts broadly enough to include violations

of anti-discrimination and labor laws.

### c.    Section 302(a)(3)

Section 302(a)(3) permits an exercise of jurisdiction over a defendant who commits

a tortious act outside the state, as long as the defendant either engages in regular

business activities in the state or the defendant was aware that the defendant's actions

would have consequences in New York.  CPLR § 302(a)(3)(i-ii).  The evidence cited above

indicates that MCI has no business operations in the state; that same evidence also

supports a finding that MCI does not "regularly [do] or [solicit] business, or [engage] in any

other persistent course of conduct, or [derive] substantial revenue from goods used or

consumed or services rendered, in the state[.]"  CPLR § 302(a)(3)(i).   Any basis for long-

arm jurisdiction under CPLR § 302(a)(3) thus requires a showing under Section

302(a)(3)(ii) that:

> (1) the defendant's tortious act was committed outside New York; (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York and (5) the defendant derives substantial revenue from interstate or international commerce.

Penguin Group (USA) Inc. v. American Buddha, 640 F.3d 497, 499 (2d Cir. 2011) (quoting

Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 35 (2d Cir. 2010)).  To be tortious

within the meaning of the statute, "the claim brought in New York need not be a tort under

New York law to justify invocation of § 302(a)(3) to confer jurisdiction." Ehrenfeld v.

Mahfouz, 489 F.3d 542, 551 (2d Cir. 2007).  Still, "there must be some basis for

considering the defendant's actions to be tortious, either under the law of New York or

some other pertinent jurisdiction." Id.

There is no allegation in this case that MCI committed a tortious act outside New

York that caused injury to Plaintiff in this case.  All of the conduct Plaintiff alleges injured

her occurred in New York, through the conduct of her supervisor in Baldwinsville.  As

such, there is no basis for jurisdiction under this sub-section either.

### d.    Section 302(a)(4)

Section 302(a)(4) provides for long-arm jurisdiction over a person who "owns, uses

or possesses any real property situated within the state." CPLR § 302(a)(4).  "In order to

assert jurisdiction under CPLR 302(a)(4), a plaintiff must demonstrate a relationship

between the defendants' real property and the plaintiff's causes of action." Cerberus

Capital Mgt., L.P. v. Snelling & Snelling, Inc., 12 Misc. 3d 1187(a) at *38 (N.Y. Cty. Sup.

Ct. 2005).  That party must show "a relationship between the property and the cause of

14

action sued upon." Lancaster v. Colonial Motor Freight Line, Inc., 177 A.D.2d 152, 159,

581 N.Y.S.2d 283, 288 (1st Dept. 1992).  Courts have interpreted this provision to require a

relationship between ownership of the property and the cause of action raised, such as a

dispute between a state resident and a foreign domiciliary over the sale of the property

used to invoke Section 302(a)(4).   See, e.g., Salaman v. Friedman, 11 A.D.3d 700, 701,

783 N.Y.S.2d 651, 652 (2d Dept. 2004) (court had long-arm jurisdiction because the

dispute involved confirmation of an arbitration award concerning the use of real property in

New York); Toledo v. Nye, 45 Misc. 2d 222, 223, 256 N.Y.S.2d 235, 236 (Onondaga Cty.

Sup. Ct. 1965); Karrat v. Merhib, 62 Misc. 2d 72, 73, 307 N.Y.S.2d 915, 916 (Oneida Cty.

Sup. Ct. 1970).

The evidence cited above makes clear that MCI does not own property in New

York.  Even if MCI did own such property, no allegation in this case would indicate that the

causes of action giving rise to this matter grew out of the ownership of that property.  The

employment discrimination claims in this case grew out of the employment relationship

between McLane Northeast and the Plaintiff, not out of some dispute over property.  Long-

arm jurisdiction cannot exist in this respect either.

Defendants' motion will therefore be granted in this respect.  Because the Court

has found the exercise of long-arm jurisdiction is unavailable against MCI pursuant to New

York law, the Court will decline to consider whether due process would permit such an

exercise.  MCI will be dismissed from the case.

### B.    Defendant McLane Eastern's Motion

McLane Eastern seeks dismissal for failure to serve process within the time

required by the Federal Rules.  A review of the docket indicates that Plaintiff filed her

Complaint on December 2, 2016.  See dkt. # 1.  The Court issued summonses for McLane

Company, Inc., McLane/Eastern, Inc., d/b/a McLane Northeast, and Michael Warthen on

that day.  See dkt. # 2.  The summons listed McLane, Inc.'s address in Temple, Texas and

McLane Northeast's address in Baldwinsville, New York.  Id.  On January 30, 2017,

Plaintiff sought leave for an additional forty-five days to complete service.  See dkt. #7.

The Court granted this motion on February 1, 2017, extending Plaintiff's time to serve until

March 15, 2017.  See dkt. # 8.  The Court granted another such request on March 17,

2017, proviing Plaintiff until May 1, 2017 to serve the Complaint.  See dkt. # 10.  When

Plaintiff failed to meet that service deadline, the Court issued an order to show cause,

demanding that Plaintiff show cause why the case should not be dismissed.  See dkt. #

11.  After Defendants McLane, Inc. and McLane/Eastern, Inc., wrote the Court requesting

an extension of time to answer, the Court vacated the order to show cause.  See dkt. ##s

12, 13.  Instead, the Court directed the Plaintiff "to promptly file with the court proof of

service of the summons and complaint upon each of the named defendants in this

matter."  See dkt. # 13 (emphasis in original).  On May 15, 2017, Plaintiff wrote the Court

to request that summons be reissued for the two corporate defendants.  See dkt. # 14.

The Court reissued summonses for all three Defendants.  See dkt. # 16.

     Plaintiff filed a certificate of service dated June 2, 2017 for Defendant McLane

Northeast.  See dkt. # 24.  That certificate indicated that the summons, complaint, exhibits

to the complaint, notice and orders of the court had been delivered to the Office of the

Secretary of State of New York in Albany, New York, on June 1, 2017.  Id.  Defendants'

motion argues only that Plaintiff did not serve Defendant McLane Northeast.  Defendants

do not contend that the service was defective or to the wrong party.  The Court concludes

16

that Plaintiff served McLane Northeast within the time provided by the Court.  The Court is guided in this interpretation by two factors: first, McLane Northeast is clearly aware of the Complaint and the allegations therein.  Defendant obtained an extension of time to respond to the Complaint from the Court.  Second, Defendants' motion makes clear that McLane Northeast has knowledge of the Complaint and has prepared a response to those allegations.  Under those circumstances, the Court will deny the Defendants' motion in this respect.

### C.    Substantive Motion

Defendants argue in the alternative that Plaintiff's Complaint should be dismissed against them for failure to state a claim as to the First, Fourth, Fifth and Sixth causes of action.  Having found that McLane Northeast was properly served with the Complaint, the Court will consider whether Plaintiff has properly stated a Complaint against that Defendant.  The Court will address each of the counts in question in turn.

### 1.    ADA

Defendants first argue that Plaintiff cannot maintain her claim under the Americans with Disabilities Act ("ADA") against McLane Eastern because Plaintiff failed to exhaust her administrative remedies.[2]  Courts are clear that a plaintiff complaining of discrimination under federal law "may bring suit in federal court only if he has filed a timely complaint with the EEOC and obtained a right-to-sue letter."  Shah v. New York State Dep't of Civ. Serv., 168 F.3d 610, 613 (2d Cir. 1999).  As a general rule, federal courts

_____

[2]Defendants argue that Plaintiff did not name MCI in her administrative complaint and did not add MCI to that complaint until well after the time to do so had passed.  The Court has already concluded that MCI is not subject to personal jurisdiction and dismissed MCI from the case and will not address this issue.

lack "jurisdiction to hear claims not alleged in an employee's EEOC charge."  Id. at 613-614.  The exhaustion requirement is central to the purposes of the anti-discrimination laws, "and is designed 'to give the administrative agency the opportunity to investigate, mediate, and take remedial action.'"  Id. at 614 (quoting Stewart v. United States Immigration and Naturalization Service, 762 F.2d 193, 198 (2d Cir. 1985)).   If "a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred."  Butts v. New York Dept. of Hous. Preservation & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993).

Defendants admit that Plaintiff filed a timely discrimination claim with the New York Division of Human Rights.  They argue, however, that Plaintiff's ADA claims were not included in the charge and are thus barred from this action.  "In an action in which this procedural requirement" of an administrative complaint "has been satisfied, the plaintiff may raise any claim that is 'reasonably related' to those asserted in the EEOC filing." Ximines v. George Wingate High Sch., 516 F.3d 156, 158 (2d Cir. 2009).  Courts emphasize that "'[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can be reasonably expected to grow out of the charge that was made.'" Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001)).  A court is to "'focus . . . on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" Id. (quoting Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003)).  The question is "whether the complaint filed with the EEOC gave the agency adequate notice to investigate discrimination on both bases."  Id. (internal quotations and citations omitted).  This "reasonably related" requirement permits a more generous pleading standard "based on

18

the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [she] is suffering." Id. (internal quotations omitted).

Count 1 of the Complaint alleges that Defendants violated the ADA by discriminating against Plaintiff because of a disability. Plaintiff's Complaint contains a copy of the initial verified complaint she filed with the New York State Division of Human Rights, which was received by the Division on June 29, 2015. See dkt. # 1. The Complaint alleges discrimination "because of sex, opposed discrimination/retaliation." Id. Plaintiff contends that "I am a female and I opposed sexual harassment at work. Because of this, I have been subject to unlawful discriminatory actions." Id. at ¶ 1. Plaintiff alleged that she had been subjected to sexual harassment by Defendant Michael Warthen from her first day at work, February 27, 2014. Id. at ¶ 3. She described several instances of harassing conduct by Warthen over the next year. Id. at ¶¶ 4-8. The alleged harassment continued when Plaintiff took leave for a medical issue in March 2015. Id. at ¶ 9. Plaintiff alleged that Warthen's harassment eventually caused her medical problems, and "because of Mr. Warthen's continued harassment of me and the effects on my health, I went to" supervisors and described the situation. Id. at ¶ 10. Plaintiff alleged that McLane Northeast's President, Lee Cobb, eventually informed Plaintiff he considered her a liar about her relationship with Warthen and that she would be fired because of her conduct. Id. at ¶ 11. Plaintiff related that "I believe that I was subjected to disparate treatment and terminated from employment because I am female and because I opposed discrimination at work." Id.

Plaintiff's Complaint also contains a document addressed to the New York State

Division of Human Rights titled "Further Amendment to the Complaint."  See dkt. # 1.  This

document is dated April 9, 2016.  The document contains docket numbers for both the

New York Division of Human Rights and the federal Equal Employment Opportunity

Commission ("EEOC").  One section of the document provides that "The Complaint of

6/24/15, sworn to and filed, shall be further amended to add the unlawful discriminatory

practices relating to employment because of disability discrimination (in addition to claims

based on sex, and opposed discrimination retaliation), and to relate back to such original

filing date with this agency and EEOC[.]"  Id.  Subsequent to the date of this document,

Plaintiff received a "Dismissal and Notice of Rights" letter from the EEOC.  Id.  That letter

provided that "[t]his will be the only notice of dismissal and of your right to sue we will send

you.  You may file a lawsuit against the respondent(s) under federal law based on this

charge in federal or state court."  Id.  That letter is dated September 1, 2016.  Id.

       Defendants dispute the meaning of these documents, arguing that the amendment

to Plaintiff's original administrative complaint never had an effect because Plaintiff

withdrew her administrative complaint before the state agency accepted the amendment

as filed.  Whatever the ultimate truth of Defendants' contentions, at this point in the

litigation the Court is constrained to find that Plaintiff has properly alleged that she

exhausted her administrative remedies with respect to her ADA claim.  The documents

before the Court indicate that Plaintiff filed an amended administrative complaint that

alleged disability discrimination and, after filing that amended complaint, received a right to

sue letter that included all of the claims in her administrative complaint.  Whether other

facts can be produced in discovery which undermine the alleged exhaustion is of no

matter to the instant motion.  The Court will therefore deny the motion in this respect.

20

Defendants may of course renew their motion at the close of discovery.

### 2.    ERISA

Plaintiff also brings a claim pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.  Count Five alleges that:

> the discriminatory actions of Defendant, their authorized agents and representatives, and each of them, as alleged above, were retaliatory, willful, intentional and malicious or in callous and reckless disregard of Plaintiff's right to ERISA protections, including but not limited to retirement, disability and insurance benefits, thereby causing her loss and damages.

Complt. at ¶ 31.  Defendants contend that these allegations are insufficient to state a claim for ERISA relief.

Plaintiff does not explain exactly which ERISA provision covers her suit, but–making all inferences in Plaintiff's favor–the Complaint could be read to allege that Plaintiff was discharged in retaliation for her effort to exercise some right under the statute. Section 510 of ERISA provides that:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this title, section 3001 [29 U.S.C. § 1201], or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may be entitled under the plan, this title, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140.  "To make out a prima facie case of retaliation under § 510, [a plaintiff] must show that (1) [s]he was engaged in a protected activity, (2) [defendant] was aware of that activity, (3) [s]he suffered from an adverse employment decision and (4) there was a causal connection between the protected activity and the adverse employment action." Giordano v. Thompson, 564 F.3d 163, 169 (2d Cir. 2009).  The statute applies only to "a plaintiff who exercises a right derived from: (1) an employee benefits plan, (2) 'this

subchapter,' (3) 29 U.S.C. § 1201 or (4) the Welfare and Pensions Plans Disclosure Act."
Id. at 169-70.

The only mention of an ERISA plan or retaliation for exercising a right under that
plan in Plaintiff's Complaint comes in the paragraph cited above. The Complaint contains
no allegation that Plaintiff is covered by an ERISA plan, or that her employer provides
such plans. Plaintiff does allege that she has been denied some retirement benefits as a
result of Defendants' conduct, but she does not explain what those rights were and how
they were denied. See Complt. at ¶ 2. To extent that Plaintiff contends that Defendants
violated her rights under ERISA by cutting off her pension funds, she cannot state a claim.
See Dister v. Continental Group, Inc., 859 F.2d 1108, 1111 (2d Cir. 1988) (Holding that
"'no ERISA cause of action lies where the loss of pension benefits was a mere
consequence of, but not a motivating factor behind, a termination of
employment.'")(quoting Titsch v. Reliance Group, Inc., 548 F.Supp. 983, 985 (S.D.N.Y.
1982)). Plaintiff has simply pled in a conclusory fashion that she was retaliated against
for exercising some unnamed and undefined right under ERISA. She has therefore failed
to allege facts that make her right to relief plausible. The Defendants' motion will be
granted in this respect. Because Plaintiff proceeds *pro se* and because the facts pled
here are minimal, the Court will permit Plaintiff to file an amended complaint that attempts
to state an ERISA claim should she possess information she can plead to establish one.

### 3.    FMLA Claim

Defendants finally contend that Plaintiff's claims brought pursuant to the Family and
Medical Leave Act ("FMLA"), 28 U.S.C. § 2601, et seq., should be dismissed. Plaintiff has

not, they claim, alleged the elements of a prima facie claim under that statute.

> Plaintiff's Fourth Claim alleges that:
>
> By reason of the unlawful actions and inactions alleged above, Defendant has intentionally violated the federal Family and Medical Leave Act (FMLA), 29 USC Section 2601 et seq., by failing to provide her with her FMLA notice and rights prior to terminating her, and failing and refusing to protect, so as to restore her to her last held employment position, pretextually, thereby interfering, discriminating and subjecting her to reprisal for having utilized and sought FMLA previously with her medical condition. Defendant's [sic] representatives at all times were aware and on notice of her protections as to disability and leave of absence based on disability.

Complaint at ¶ 29. Her Complaint also alleges that she "suffered [from] anxiety, depression and insomnia," and that Defendant Warthen "pursued her" while she was on leave for those conditions. Id. at ¶ 15. Plaintiff also contends that the her termination did not occur for the reasons stated by Defendants, but because of "her disability, and because of her sex and report of sexual harassment, plus FMLA leave and known record of medical conditions." Id. at ¶ 22. Defendants, she alleges, "knew that Plaintiff had been receiving medical and other treatment, was or should have been approved and qualified for more disability leave of absence[.]" Id. at ¶ 23. Her Complaint also contends that Defendants refused to discuss modifications to her work schedule when she returned from an April 2012 leave, and thus "she was deprived of her right . . . to be actively restored to her last held position upon the anticipated end of her leave, [and] deprived of full rights to protection of the FMLA and other laws[.]" Id.

"FMLA claims come in at least two varieties: interference and retaliation." Woods v. START Treatment & Recovery Ctrs., Inc., 864 F.3d 158, 166 (2d Cir. 2017). An "interference" claim occurs "when [an] employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." To prove such a claim, "a plaintiff

must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant

is an employer as defined by the FMLA; 3) that she was entitled to take leave under the

FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that

she was denied benefits to which she was entitled under the FMLA." <u>Graziadio v. Culinary</u>

<u>Inst. of America</u>, 817 F.3d 415, 424 (2d Cir. 2016). A "retaliation" claim "involve[s] an

employee actually exercising her rights or opposing perceived unlawful conduct under the

FMLA and then being subjected to some adverse employment action by the employer."

<u>Woods</u>, 864 F.3d 166. If a plaintiff alleges retaliation for exercising her rights under the

FMLA, she must allege a *prima facie* case that: "1) [s]he exercised rights protected under

the FMLA; 2) [s]he was qualified for [her] position; 3) [s]he suffered an adverse

employment action; and 4) the adverse employment action occurred under circumstances

giving rise to an inference of retaliatory intent." <u>Potenza v. City of New York</u>, 365 F.3d

165, 168 (2d Cir. 2004).

Defendants argue that Plaintiff has failed to make out a *prima facie* case on either

type of FMLA claim. They contend that she has not alleged that: she gave notice of her

intent to take FMLA leave; that she took such leave; that she was denied FMLA benefits;

that she attempted to exercise her rights under the Act; that McLane interfered with that

right; or that she was retaliated against for exercising those rights. Beyond that,

Defendants point out, Plaintiff does not allege that she is an eligible employee under the

Act, or that McLane is covered by the Act. Thus, they contend, Plaintiff's FMLA claim

should be dismissed.

The Court agrees with the Defendants that Plaintiff has failed to allege a prima

facie case either for an interference or retaliation claim under the FMLA. While her

24

Complaint mentions that Act, the Complaint does not offer any specific allegations that Plaintiff was an eligible employee under the FMLA, or that Defendants were covered by that Act.  While the Court finds that Plaintiff's Complaint does attempt to allege that Plaintiff exercised rights under the Act and that she was either denied those rights or faced retaliation for attempting to exercise those rights, Plaintiff's allegations are conclusory. The Complaint fails to identify the FMLA rights involved and do not explain how or when Plaintiff tried to exercise them.  The motion will therefore be granted in this respect.

The motion will be granted with leave to replead, however.  The Court can glean from the *pro se* Complaint that Plaintiff may have facts sufficient to make out a *prima facie* case under the FMLA.  Should Plaintiff have such facts, she shall be permitted to file an Amended Complaint that states them in sufficient detail to make her right to relief plausible within the meaning of the Federal Rules of Civil Procedure.

## IV.    CONCLUSION

For the reasons stated above, the McLane Defendants' motion to dismiss, dkt. # 20, is hereby GRANTED in part and DENIED in part, as follows:

1.  Defendants' motion is GRANTED with prejudice with respect to Defendant McLane Company, Inc., and Defendant McLane Company, Inc., is hereby DISMISSED from the case;

2.  Defendants' motion is GRANTED without prejudice with respect to Plaintiff's claims brought pursuant to the FMLA and ERISA against Defendant McLane Eastern; and

3.  Defendants' motion is DENIED in all other respects.

25

Plaintiff may file an Amended Complaint that attempts to re-state those claims which the Court has dismissed without prejudice.  Plaintiff shall file any Amended Complaint within twenty-one (21) days of the date of this Order.  Failure to file an Amended Complaint within that time will cause the case to proceed on those claims which remain in the action as a result of this Order.

**IT IS SO ORDERED**

Dated:October 26, 2017

Thomas J. McAvoy
Senior, U.S. District Judge

26